# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE K. MCCAMMON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    CASE NO: 1:08-mc-00340 (CKK) |
| | ) |
| UNITED STATES, et al., | ) |
| | ) |
|     Respondents. | ) |

## Motion for Rehearing and Motion for Rehearing *en Banc*

1. On August 5, 2008, Honorable U.S. District Judge Colleen Kollar-Kotelly issued an order granting the United States' motion to dismiss Petitioner's petition to quash IRS summons.

2. Respectfully, Petitioner believes that the order is potentially in conflict with a decision of the U.S. Supreme Court and another District Court. Moreover, the order disregards one or more questions of exceptional importance as outlined herein. 28 USC §35 and §40

3. Petitioner would like to call the Court's attention to certain points of fact and law that have been overlooked and would support the Petitioner's request for a rehearing. The present case is appropriate for the honorable judges of this court to exercise their power for a rehearing.

**I.     Petitioner invoked and Court ignored the interests of Petitioner and the judicial system**

4. In Paragraph 27 of the Surreply, Petitioner wrote: rather than filing various petitions in different district courts across the country, which would unduly burden the judicial system, it would be more in line with the values of judicial economy to consolidate all the filings into one – here in the District of Columbia. Doing so would be more in favor of the overall efficiency in the operation of the judicial system. After all, Respondent banks and corporate entities have made no objections to this Court's jurisdiction. They are worth billons of dollars and would not be burdened by this case regardless of forum. It would not be a matter of fairness and comity to place the burden to submit filings across the country on Petitioner who has far less resources than Respondents.

5. What Petitioner invoked was never considered.

6. In *Asahi Metal Industry Co.*, the Supreme Court stated: We have previously explained that the determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S., at 292,

100 S.Ct., at 564 (citations omitted). *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano* 480 U.S. 102 at 113, 107 S.Ct. 1026 (U.S.Cal.,1987)

7. This Court never considered the Petitioner's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, or the burden on Respondents compared to that on Petitioner as Petitioner stated in the Surreply.

8. Some courts may require certain filings to be done in person. Certainly, it is not in Petitioner's interest to travel to five different locations or hire multiple attorneys in all these jurisdictions to file petitions to quash IRS summonses. This Court never said that such a scenario would be in Petitioner's interest, although that is exactly what the court implied that Petitioner should do. This Court never said that what it is ordering is the most judicially efficient way to adjudicate this case.

**II.   Petitioner invoked and Court ignored a legal authority that section §7609 is disjunctive**

9. In the Court order granting the United States' motion to dismiss Petitioner's petition to quash, Honorable U.S. District Judge Colleen Kollar-Kotelly stated that "Petitioner offers no legal authority for the proposition that 26 USC §7609(h) is disjunctive and the Court is not aware of any." The Honorable Judge also said: "Nor does Petitioner offer any legal support for her claim that the term "resides or is found" should

be read as referring to the Court's personal jurisdiction over the subpoenaed recordkeepers." Respectfully, Petitioner would like to differ.

10. On page 3 of Petitioner's MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS (filed on June 9, 2008), Petitioner wrote: in *Skul v. U.S.*, United States District Judge John R. Adams stated: "this court lacks personal jurisdiction over Greenpoint Mortgage Funding, Inc. and Kimco Realty Corporation. This is not the district court within which either of those parties to be summoned resides." *Skul v. U.S.*, 2007 WL 1144799 (N.D.Ohio 2007).

11. The *Skul v. U.S.* case is related to IRS issued summons, and it was a legal authority offered by Petitioner for the proposition that 26 USC §7609 is disjunctive. Judge Adams linked "personal jurisdiction" to the district within which "either of those parties to be summoned resides."

12. In addition, the Supreme Court has considered the "sufficient relationship between the defendant and the forum" to be an element of personal jurisdiction. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied by notice to the defendant, a constitutionally sufficient relationship between the defendant and the forum, and a basis for the defendant's amenability to service of summons. U.S.C.A. Const. Art. 3, § 1 et seq.; Amends. 5, 14" *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd*. 484 U.S. 97, 108 S.Ct. 404 U.S.La.,1987.

13. By reading "resides" or "found" as an element of personal jurisdiction, it was appropriate for Petitioner to argue that 26 USC §§7602(b), 7604(a), and 7609(h) should be read as disjunctive.

14. Congress has determined the power of all district courts to hear cases related to the quashing of IRS summons. That is the Court's subject-matter jurisdiction granted to them by Congress. Then Congress delineated the courts authority by limiting it based on territory – such as with the "resides or is found" language.

15. Courts have always historically delineated between classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction).

16. The basic definition of "Personal jurisdiction" is a person's presence within the territorial jurisdiction of a Court. The basic definition of "subject-matter jurisdiction" is the court having the authority to adjudicate on the subject-matter of the case.

17. In the present case, the subject-matter is the IRS summons. Where Respondents reside relate to territorial jurisdiction. However, The Court's order implies that both the IRS summons issue AND the territorial jurisdictions are both elements of subject-matter jurisdiction. The Court is stating that it lacks subject-matter jurisdiction because Respondents are outside the territorial jurisdiction of the court. Unlike what Congress intended, this Court is treating the classes of cases and the persons as one type of jurisdiction.

18. If it is true that "resides" or "found" provisions in §7609(h) go to a court's subject matter jurisdiction, then the Court should have explained to Petitioner how personal jurisdiction is decided based on the language of that provision. After all, the court needs both jurisdictions to hear a case.

### III. Petitioner invoked and Court ignored *International Shoe* standards

19. The Court made a reference to *Savage v. Bioport, Inc.* where plaintiff did not allege contacts with the District sufficient to establish general or specific jurisdiction.
20. The Court used a quotation from another case with regard to general or specific jurisdiction implying that the decision made there applies to this case without outlining how each of the four minimum contacts principles of *International Shoe* presented by petitioner fail in this case.
21. It is not clear to Petitioner what standard was used by the Court to determine the sufficiency of Respondents' contacts with the District. Is the court denying any kind of Respondents' activity in the District?
22. In some form or another, all Respondents (their parent companies or subsidiaries) have either affiliations with local businesses or provide services to residents of the District of Columbia. Some of them have even been sued in courts within the District.

23. The court's order did not specifically deny that all Petitioners' activities do not meet any of the Supreme Court's *International Shoe* standards. This Court never even mentioned "*International Shoe*".

24. "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' Hanson v. Denckla, 357 U.S. [235,] 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) ], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others." Id., at 297, 100 S.Ct., at 567. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano* 480 U.S. 102 at 110, 107 S.Ct. 1026 (U.S.Cal.,1987).

25. The Supreme Court added: Most recently we have reaffirmed the oft-quoted reasoning of Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking

the benefits and protections of its laws." *Burger King,* 471 U.S., at 475, 105 S.Ct., at 2183. "Jurisdiction is proper … where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Ibid.,* quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original*). Id.* Asahi at 109.

26. This Court already knows and needs no evidence from Petitioner to conclude, nor did it deny, that Respondents (any subsidiary or parent company such as Amazon.com) have taken actions themselves purposefully directed toward conducting activities within the District of Columbia. Every national bank and corporation similar to Respondents purposefully seeks to conduct activities everywhere in the country.

**IV. Petitioner invoked and Court ignored that banks are instrumentalities of the federal government**

27. Petitioner stated that "national banks are instrumentalities of the federal government, created for public purpose, and as such necessarily subject to the paramount authority of the United States." *Davis v. Elmira Savings,* 161 U.S. 275 (1896).

28. By not addressing this issue, is the court implying that Respondent banks are not instrumentalities of the federal government (against a Supreme Court opinion), or that the banks are instrumentalities but cannot be sued in the Capitol's District – the seat of the federal

government?

29. Petitioner believes that instrumentalities of the federal government can be sued within the District of Columbia.

### V.   Petitioner invoked and Court ignored §1332 jurisdiction

30. In the Surreply, Petitioner also stated: the amount of controversy between Petitioner and Respondent the United States, its Treasury Department, or its agency the Internal Revenue Service exceeds $75,000. That being the case, the district courts do have original jurisdiction under 28 USC §1332(a)(1).

31. Petitioner invoked the "diversity of citizenship" §1332 jurisdiction since the claim between the parties of diverse citizenship exceeds the required jurisdictional amount, but the Court did not rule on this issue.

### VI.   Petitioner invoked and Court ignored the Fifth Amendment

32. In the Surreply, Petitioner stated: the Fifth Amendment protects Petitioner against being forced to provide evidence against herself, and of due process before a loss of property. This Court has jurisdiction to afford Petitioner the opportunity to be heard and to prevent violations of due process through IRS summonses which seek evidence against Petitioner.

33. The court never ruled on the Fifth Amendment question.

34. In *Bell v. Hood,* the Supreme Court said: "Petitioners' complaint asserts that the Fourth and Fifth Amendments guarantee their rights to be free from unauthorized and unjustified imprisonment and from unreasonable searches and seizures. They claim that respondents' invasion of these rights caused the damages for which they seek to recover and point further to 28 U.S.C. s 41(1), 28 U.S.C.A. s 41(1), which authorizes the federal district courts to try 'suits of a civil nature' where the matter in controversy 'arises under the Constitution or laws of the United States,' whether these are suits in 'equity' or at 'law.' Petitioners argue that this statute authorizes the Court to entertain this action at law and to grant recovery for the damages allegedly sustained.

35. "And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. Whether the petitioners are entitled to recover depends upon an interpretation of 28 U.S.C. s 41(1), 28 U.S.C.A. s 41(1), and on a determination of the scope of the Fourth and Fifth Amendments' protection from unreasonable searches and deprivations of liberty without due process of law. Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the district court has jurisdiction. *Gully v. First National Bank,* 299 U.S. 109, 112, 113, 57 S.Ct. 96, 97, 81

L.Ed. 70; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 200, 41 S.Ct. 243, 244, 245, 65 L.Ed. 577." *Bell v. Hood,* 327 U.S. 678 at 684-685, 66 S.Ct. 773 at 777 (U.S. 1946)

### VII. Petitioner wishes to invoke 28 U.S.C. § 1331 jurisdiction

36. 28 U.S.C. § 1331 provides for "federal-question" jurisdiction. A plaintiff properly invokes §1331 jurisdiction when she pleads a colorable claim "arising under" the Federal Constitution or laws. See *Bell v. Hood,* 327 U.S. 678, 681-685, 66 S.Ct. 773, 90 L.Ed. 939. Petitioner wishes now to invoke 28 U.S.C. § 1331 jurisdiction.

### VIII. CONCLUSION

37. By granting the United States' motion to dismiss while ignoring many of Petitioner's arguments, that decision must be vacated and this case must be reheard.

38. Respondent banks and corporations were duly served, permitted their time to answer to elapse, and never objected to this Court's jurisdiction, or place of suit, by motion, pleading or otherwise.

For the reasons listed herein, Petitioner believes that the Court's order of August 5, 2008 conflicts with at least one Supreme Court opinion and disregards one or more questions of exceptional importance. The case is

appropriate for the honorable judges of this court to exercise their power for a rehearing.

Respectfully submitted,

____/s/ Elias Aoun_____                    Date: August 11, 2008
Elias Aoun, Esq. Bar Number 479315
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
Cell Phone 202-257-7796

**CERTIFICATE OF SERVICE**

I, Elias Aoun, certify that on or about August 11, 2008, true and correct copies of the foregoing were served upon the following via the Court's ECF filing protocol:

>BENJAMIN J. WEIR, ESQUIRE
>Trial Attorney, Tax Division
>U.S. Dept. of Justice
>P. O. Box 227
>Ben Franklin Station
>Washington, DC 20044

and sent via U.S. Mail to the following:

>Chase Bank, USA NA
>7610 West Washington St.
>Indianapolis, IN 46231

>__/s/ Elias Aoun____
>ELIAS AOUN